# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PARK PET SHOP, INC., POCKET PUPPIES BOUTIQUE, INC., JIM PARKS, SR., LANE BORON, SUSAN REID, and CEDAR WOODS FARM, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE CITY OF CHICAGO through the City Council of Chicago, SUSANA A. MENDOZA, in her official capacity as City Clerk of the City of Chicago, and SANDRA ALFRED, in her official capacity as Executive Director of the City of Chicago Department of Animal Control,[1] | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

15 C 1450

Judge Jorge L. Alonso

## MEMORANDUM OPINION AND ORDER

In their second amended complaint, plaintiffs, Cedar Woods Farm, a Missouri dog breeder that supplies dogs to Chicago pet stores, and Park Pet Shop and Pocket Puppies, two pet stores in Chicago, allege that a Chicago ordinance regulating the sale of certain animals is unconstitutional, preempted by federal and state law, and violates the City's home rule powers. The City has filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the second amended complaint. For the reasons set forth below, the Court grants the motion.

---

[1]Because Mendoza and Alfred are sued only in their official capacities, and those claims are redundant of the claims asserted against the City, *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Court dismisses them.

### Ordinance

In relevant part, the contested ordinance states:

(b) *Restrictions on the retail sale of animals*. A retailer [defined as "any person licensed or required to be licensed under this chapter who offers for sale any dog, cat or rabbit in the City"] may offer for sale only those dogs, cats or rabbits that the retailer has obtained from:

> (1) an animal control center, animal care facility, kennel, pound or training facility operated by any subdivision of local, state or federal government; or
> (2) a humane society or rescue organization.

(c) *Exemptions*. The restrictions on retailers set forth in subsection (b) . . . shall not apply to any entity listed in paragraphs (1) or (2) of subsection (b) of this section, or to any veterinary hospital or clinic licensed pursuant to the Veterinary Medicine and Surgery Practice Act of 2004, codified at 226 ILCS 115.

Chi., Ill., Code § 4-384-015.

### Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

### Preemption & Home Rule

Plaintiffs argue that the ordinance is preempted by the federal Animal Welfare Act. *See DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 721 (7th Cir. 1994) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (stating that a federal law preempts a local law if: (1) the federal statute so states; (2) there is "a pervasive scheme of federal regulation" such that preemption is implied; or (3) a local law "conflicts with [a] federal law," or "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"). The federal statute, however, explicitly contemplates that state and local governments will enact animal welfare regulations. *See* 7 U.S.C. § 2143(a)(1), (8) (stating that the grant of federal authority "[to] promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors . . . . shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary"); § 2145(b) ("The Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject."); *DeHart*, 39 F.3d at 722 ("[I]t is clear that the Animal Welfare Act does not evince an intent to preempt state or local regulation of animal or public welfare."). Thus, plaintiffs' federal preemption argument fails.

Plaintiffs also argue that the ordinance exceeds the City's home rule powers under the Illinois Constitution and is preempted by the state Animal Welfare Act. The Illinois Constitution permits a home rule unit like the City "[to] exercise any power and perform any function pertaining to its government and affairs including . . . the power to regulate for the protection of the public health, safety, morals and welfare" and "exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically

3

limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. art. 7, § 6(a), (I). The phrase "pertaining to its government and affairs" means "that the powers of home-rule units relate to their own problems, not to those of the state or the nation." *City of Des Plaines v. Chi. & N.W. Ry. Co.*, 357 N.E.2d 433, 435 (Ill. 1976) (quotation omitted). The "pertaining to" phrase:

> [L]eaves some leeway for judicial intervention. But . . . the courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies. That is, because the legislature can always vindicate state interests by express preemption, only vital state interests would allow a court to decide that an exercise of home rule power does not pertain to local government and affairs.

*City of Chi. v. StubHub, Inc.*, 979 N.E.2d 844, 851 (Ill. 2011) (quotation omitted).

To determine whether a problem is appropriately addressed at the local level, the Court must determine "the nature and extent of the problem" and whether "the state has a vital interest [in it]" and "a traditionally exclusive role" in addressing it. *Id.* at 852-853 (quotation omitted). The problem the ordinance attempts to address is the adverse impact of the sale of mill animals, a problem that affects both state and local governments. *See Mo. Pet Breeders Ass'n v. Cnty. of Cook*, No. 14 C 6930, 2015 WL 2448332, at *4 (N.D. Ill. May 21, 2015) (noting that "both state and local governments have a vital interest in animal control"); *Cnty. of Cook v. Vill. of Bridgeview*, 8 N.E.3d 1275, 1279, *appeal denied*, 23 N.E.3d 1200 (Ill. 2015) ("In Illinois, the problem of animal control, overpopulation, and the spread of rabies is both a local and statewide concern."). However, the state has not traditionally had an exclusive role in addressing issues of animal control; in fact, the state started licensing pet sellers more than forty years after the City started doing so. (*See* City's Mot. Dismiss, Ex. C, Chi., Ill., Code §§ 2072-75 (1922)); 1965 Ill. Laws 2956. Moreover, none of the state statutes pertaining to animal control and welfare contains "specific language limiting or

4

denying the power or function" of a home rule unit, as required to vitiate home rule powers. *See* 5 Ill. Comp. Stat. 70/7 ("No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit . . . unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."). In fact, at least one statute explicitly permits local regulation. *See* 510 Ill. Comp. Stat. 5/24 ("Nothing in this Act shall be held to limit in any manner the power of any municipality or other political subdivision to prohibit animals from running at large, nor shall anything in this Act be construed to, in any manner, limit the power of any municipality or other political subdivision to further control and regulate dogs, cats or other animals in such municipality or other political subdivision provided that no regulation or ordinance is specific to breed."). In short, because the City and state both have an interest in this area, and the state has not barred home rule units from enacting ordinances that impact it, the ordinance does not exceed the City's home rule authority.

Plaintiffs fare no better with their claim that state law preempts the ordinance. "To determine whether a local law is preempted by Illinois law, courts must 'determine whether the legislature has specifically limited the concurrent exercise of this power or specifically declared that the state's exercise of this power is exclusive.'" *Mo. Pet Breeders*, 2015 WL 2448332, at *5 (quoting *City of Chi. v. Roman*, 705 N.E.2d 81, 88 (Ill. 1998)). As discussed above, the state legislature has done neither. Thus, the ordinance is not preempted by state law.

**Commerce Clause**

Plaintiffs allege that the ordinance violates the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3 (giving Congress the power "[t]o regulate Commerce . . . among the several States"). "Although [the Commerce Clause] does not expressly limit the states' ability to interfere with interstate commerce, the Supreme Court consistently has held that the Clause contains a further negative command, known as the 'dormant Commerce Clause,' which 'prohibits States from taking certain actions respecting interstate commerce even absent congressional action.'" *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 656-57 (7th Cir. 1995) (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987)). The Supreme Court:

> [H]as adopted a two-tiered approach to analyzing state economic regulation under the [dormant] Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry. . . . When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). [The Court has] also recognized that there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. . . .

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986); *see United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (quotations omitted) ("In this context, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.").

On its face, the ordinance does not discriminate against out-of-state interests; it permits City retailers to sell animals obtained from one kind of source, *i.e.*, government-operated facilities,

humane societies, and rescue organizations, and bars them from selling animals from any other source, regardless of where the sources are located.

Nonetheless, plaintiffs contend that the ordinance is discriminatory because its preamble contains the following: "According to Illinois Department of Agriculture records, in the City alone, City pet stores purchased approximately 1,500-2,000 dogs from out-of-state breeders for sale to the public in 2011 and 2012." (*See* 2d Am. Compl., Ex. A, Ordinance at 1.) But the preamble also notes that dogs purchased from in-state breeders, which are not subject to the state's record-keeping requirements, contribute to the problem. *See id.* ("The number of dogs purchased for sale, and sold to the public, is likely higher as these records do not reflect dogs purchased from in-state breeders."); *see also* 8 Ill. Admin. Code § 25.47 (requiring pet shops to obtain a health certificate for any animal imported into Illinois from another state and file a copy of it with the Illinois Department of Agriculture.) More importantly, as a matter of Illinois law, "a preamble is not a part of [a statute] and has no substantive legal force." *Atkins v. Deere & Co.*, 685 N.E.2d 342, 345 (Ill. 1997) (quotations omitted). Thus, the reference to out-of-state breeders in the preamble does not make the ordinance facially discriminatory.[2]

Alternatively, plaintiffs argue that the ordinance has a disparate impact on interstate commerce because it "provide[s] favored access to . . . . animals [that are] bred within the state." (Pls.' Resp. Mot. Dismiss at 12.) However, the ordinance does not allow City retailers to sell animals obtained from breeders located in Illinois; in fact, it prohibits them from doing so.

---

[2]City Clerk Mendoza's statement that the ordinance "is the beginning of the end for the puppy mill industry and its powerbase in Iowa, Missouri and Indiana," (*see* 2d Am. Compl., Ex. 2, 2/20/15 Press Release), does not change the fact that the ordinance, by its terms, does not favor Illinois animal sources over those located elsewhere.

7

Moreover, it does not prohibit out-of-state breeders or in-state breeders that are not "retailers" from selling animals to Illinois residents directly, via the internet, or through any means other than a City retailer, and does not require that animals be "processed" in Illinois, *i.e.*, rescued or housed in a humane society or government-operated facility located here. Thus, it is difficult to see how the ordinance burdens interstate commerce at all.

Even if it has some incidental impact, however, the ordinance still "[would] be upheld unless the burden [it] impose[s] on . . . [interstate] commerce [is] clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see Nat'l Paint & Coatings Ass'n v. City of Chi.,* 45 F.3d 1124, 1131 (7th Cir. 1995) (stating that for "laws with mild disparate effects and potential neutral justifications . . . [,] the state must establish that reasonable persons who held all states' interests in equal regard could think that net benefits remained"). The City has a legitimate interest in the welfare of both animals and its treasury, *C&A Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383, 429 (1993) (Souter, J., dissenting) (noting that "[p]rotection of the public fisc is a legitimate local benefit"), *Cavel International, Inc. v. Madigan*, 500 F.3d 551, 557 (7th Cir. 2007) ("States have a legitimate interest in prolonging the lives of animals that their population happens to like."), and both of those interests animate the ordinance. (*See* 2d Am. Compl., Ex. 1, Ordinance, Preamble (stating that: (1) "[p]et stores . . . have traditionally been a sales outlet for young dogs, cats and rabbits bred in 'puppy mills,' 'kitten mills,' and 'rabbit mills'"; (2) "[t]he documented abuses of puppy and kitten mills include over-breeding; inbreeding; minimal to non-existent veterinary care; lack of adequate food, water and shelter; lack of socialization; lack of adequate space; and the euthanization of unwanted animals"; (3) "The Chicago Commission on Animal Care and Control (the 'CACC') impounds approximately 20,000

animals each year" and "the City spent between $234,864-$303,188 euthanizing dogs and cats in 2011" and between "$199,124-$251,381" doing so in 2012; (4) "[b]y promoting the adoption of dogs and cats [in CACC custody], this Ordinance will reduce the financial burden on Chicago taxpayers, who pay much of the cost to care for and euthanize many thousands of animals"; (5) "The City incurs significant costs caring for and treating animals brought into the CACC"; (6) "Consumers may be more likely to adopt a dog or cat if dogs or cats were not readily available for purchase in pet stores."). Thus, even if the ordinance has some minimal effect on interstate commerce, plaintiffs have not carried "the[ir] burden of showing that [that impact] . . . is excessive compared to the local interest[s]" served by the ordinance. *DeHart*, 39 F.3d at 723.

**Equal Protection**

The ordinance violates the Equal Protection Clause only if "there is [no] reasonably conceivable state of facts that could provide a rational basis" for the distinction it draws between retailers and other animal sources. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see Nat'l Paint & Coatings*, 45 F.3d at 1127 (quoting *Beach Commc'ns*, 508 U.S. 307, 313) ("[A] legislative decision 'is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'"). As discussed above, the justifications the City offers for the ordinance, concern for animal welfare and the condition of the City's coffers, are rational bases for the ordinance. *See Beach Commc'ns*, 508 U.S. at 315 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").

9

Even so, plaintiffs argue that the ordinance is infirm because it is both over-inclusive, by banning retailers from selling animals that come from reputable breeders, and under-inclusive, by applying the ban solely to retailers. "But legislation 'does not violate the Equal Protection Clause merely because the classifications [it makes] are imperfect.'" *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). "A law can be underinclusive or overinclusive without running afoul of the Equal Protection Clause." *Id.*; *see Mo. Pet Breeders Ass'n*, 2015 WL 2448332, at *7 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) ("A government entity may . . . 'adopt[] regulations that only partially ameliorate a perceived evil and defer[] complete elimination of the evil to future regulations.'"). The ordinance's focus on retailers is rationally related to the goal of decreasing the number of mill-produced animals sold in the City, even if it does not entirely solve the problem. Thus, it does not violate the Equal Protection Clause.

**Contracts Clause**

Plaintiffs also allege that the ordinance violates the Contracts Clause of the Constitution.[3] *See* U.S. Const. art 1, § 10 (prohibiting the states from making any law "impairing the Obligation of Contracts"). To determine whether the ordinance violates the Contracts Clause, the Court asks whether: (1) "the [o]rdinance in fact operates as a substantial impairment of existing contractual

---

[3]Though plaintiffs appear to allege a takings claim in this count as well (*see* 2d Am. Compl. ¶ 111), they do not respond to the City's motion to dismiss that claim. Accordingly, they have waived it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument–as the Bontes have done here–results in waiver.").

relationships; (2) "the [C]ity has a significant and legitimate public purpose justifying the [o]rdinance"; and (3) "the effect of the [o]rdinance on contracts is reasonable and appropriate given the public purpose behind [it]." *Chi. Bd. of Realtors, Inc. v. City of Chi.*, 819 F.2d 732, 736 (7th Cir. 1987) (citations omitted). Plaintiffs' claim fails at each level.

With respect to the first inquiry, plaintiffs do not specifically identify any current contractual relationship that the Ordinance impairs or explain how the ordinance impairs it. (*See* 2d Am. Compl. ¶ 13 (alleging that plaintiff Cedar Woods Farm "currently has agreements in place to do a significant portion of its business" in Chicago); *id.* ¶ 43 (alleging that, as a result of the ordinance, plaintiff "Pet Shops' . . . contracts will be violated"); *id.* ¶ 49 (alleging that the ordinance will force plaintiff Pet Shops "[to] violate their long term leases and other agreements"); *id.* ¶ 114 (alleging that the ordinance will "will prevent plaintiffs from fulfilling their obligations [under their current contracts], including fulfilling warranties they have granted to clients and maintaining their commercial property that is specifically built to conduct the sale of companion animals").) Plaintiffs' failure to do so dooms their Contracts Clause claim. *See Active Disposal, Inc. v. City of Darien*, No. 09 C 2930, 2010 WL 1416461, at *2 (N.D. Ill. Mar. 31, 2010), *aff'd*, 635 F.3d 883 (7th Cir. 2011) (holding that a complaint's "passing reference to 'maintaining existing contracts'" without allegations about "which (if any) plaintiffs held such contracts, the terms of those contracts, or how they were impaired by the contested ordinances" was insufficient to state a Contracts Clause claim).

Even if plaintiffs had satisfied the first step of the analysis, their claim would still fail at the second and third. As discussed above, the City has significant and legitimate public purposes – protecting animals and the public fisc – for enacting the ordinance, and the Contracts Clause does

not strip the City of its power to protect those interests. *See Exxon Corp. v. Eagerton*, 462 U.S. 176, 190 (1983) (quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977)) ("The Contract Clause does not deprive the States of their 'broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result.'"); *Chi. Bd. of Realtors*, 819 F.2d at 735 (7th Cir. 1987) (noting that the Contracts Clause "does not abrogate a state's inherent power to protect the interests of its citizens"). Moreover, because the City is not a party to the allegedly impaired contracts, "the . . . scrutiny [at step three] is relaxed," and the Court "defer[s] to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* Because, as discussed above, the ordinance survives rational basis review, it also passes muster at step three of the Contracts Clause analysis. *See Mo. Pet Breeders*, 2015 WL 2448332, at *11 (The inquiry under the Contract Clause resembles rational basis review.").

**Vagueness**

Plaintiffs' final argument is that the ordinance is unconstitutionally vague because it does not define "kennel" and "shelter." That flaw, plaintiffs say, means that Park Pet Shop can be both a "retailer," which cannot sell animals from breeders, and a "kennel," which can, thereby "allowing law enforcement to pick and choose what facilities it wishes to prosecute." (2d Am. Compl. ¶ 134); *see Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999) (a statute is unconstitutionally vague "if it fails to provide fair warning as to what conduct will subject a person to liability" or lacks "an explicit and ascertainable standard to prevent those charged with enforcing [it] from engaging in arbitrary and discriminatory enforcement") (quotations and citations omitted).

12

The Court disagrees. Though the ordinance does not define "kennel" (or "shelter," though that term appears only in the preamble), it makes clear that a kennel is a type of government-operated animal facility. *See* Chi., Ill., Code § 4-384-015(b)(1) (stating that a retailer may only sell cats, dogs, and rabbits obtained from "an animal control center, animal care facility, kennel, pound or training facility operated by any subdivision of local, state or federal government"). Because a privately-owned pet shop cannot possibly be a kennel, plaintiffs' vagueness argument and alleged fear of selective prosecution are unfounded.

Alternatively, plaintiffs contend that the ordinance is vague because its preamble states that it "will not affect a consumer's ability to obtain a dog or cat of his or her choice directly from a breeder," but its definition of "retailer"–"any person licensed or required to be licensed under this chapter who offers for sale any dog, cat or rabbit in the City"–can include breeders. However, as noted above, the ordinance's preamble "has no substantive legal force." *Atkins*, 685 N.E.2d at 345 (quotations omitted). Thus, any alleged conflict between the preamble and the substantive provisions does not render the ordinance unconstitutionally vague.

## **Conclusion**

For the reasons set forth above, the Court grants defendants' motion to dismiss [64]. Moreover, because the claims cannot be cured by amendment, the dismissal is with prejudice. This case is terminated.

**SO ORDERED.**                  **ENTERED: November 5, 2015**

                                                  **HON. JORGE L. ALONSO**
                                                  **United States District Judge**